IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02984-CNS-KAS

ZZAP WELLNESS, LLC, a dissolved Colorado corporation,

    Plaintiff,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida corporation,

    Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Unopposed[1] Motion to Amend First Amended Complaint (ECF No. 1-3)** [#45] (the "Motion"). Defendant filed a Response [#50] in opposition to the Motion [#50]. No reply brief was filed and the time to do so has elapsed. The Motion [#45] was referred to the undersigned. *See Memorandum* [#47]. The Court has reviewed the briefing, the entire case file, and the applicable law. Based on the following, the undersigned **RECOMMENDS** that the Motion [#45] be **DENIED**.

### I. Background[2]

**A.**     **Factual Background**

In December 2017 and January 2018, Plaintiff Zzap Wellness, LLC ("Plaintiff or Zzap") obtained two loans from non-party Ascentium Capital, LLC ("Ascentium") to finance its purchase of two "cool sculpting devices" (CSDs). *Prop. Am. Compl.* [#45-1],

---

[1] As discussed below, despite its title the Motion [#45] is not unopposed. *See generally Response* [#50].

[2] The factual background is drawn from Plaintiff's Proposed Second Amended Complaint [#45-1].

¶¶ 5-6. The Ascentium loans required Plaintiff to maintain insurance on the CSDs through an insurer of Ascentium's choice. *Id.*, ¶ 9. Ascentium selected Defendant American Bankers Insurance Company of Florida ("Defendant" or "ABIC") and obtained Policy #ASP003784400 (the "Policy"). *Id.*, ¶ 10. Ascentium served as Plaintiff's point of contact with Defendant for communications about the Policy. *Id.*, ¶ 13.

In January 2020, a power surge at Plaintiff's office rendered one of the CSDs unusable, even though Plaintiff had properly maintained the devices. *Id.*, ¶¶ 14-15. Plaintiff communicated with Ascentium representatives regarding the broken CSD, and Ascentium provided Plaintiff a Policy Summary. *Id.*, ¶¶ 16-18; *Policy Summary* [#45-2]. On March 16, 2020, Plaintiff filed a claim on the Policy, seeking coverage from Defendant. *Prop. Am. Compl.* [#45-1], ¶ 20. From March 2020 through March 2021, Plaintiff communicated with Defendant through Ascentium and provided information to help process the claim. *Id.*, ¶ 21. Because Plaintiff could not generate profits through CSD services while the claim was pending, in October 2020 it fell into default on its loans with Ascentium. *Id.*, ¶ 22.

On March 9, 2021, after a technician's allegedly "cursory and incomplete inspection" found that the CSD was not broken, Defendant denied coverage for the claim due to Plaintiff's supposed "lack of maintenance." *Id.*, ¶¶ 23-29. Meanwhile, Ascentium sent Plaintiff a "Notice of Default and Acceleration" demanding payment of the loan balances and repossession of the CSDs. *Id.*, ¶ 31; *Notice of Default* [#45-4]. Ascentium filed suit against Plaintiff in the District Court for Larimer County, Colorado, and on November 7 or 8, 2022, they reached a settlement agreement. *Prop. Am. Compl.* [#45-1], ¶ 36.

Plaintiff now alleges that Defendant misled it into thinking that it was an insured or beneficiary under the Policy, which induced it to settle with Ascentium and surrender the CSDs. *Id.*, ¶¶ 40-42. In support, Plaintiff notes that Ascentium "referred to the Policy as Plaintiff's Policy and to the Claim as Plaintiff's Claim in communications with Plaintiff." *Id.*, ¶ 44 (citing *Ascentium Emails* [#45-5]). Plaintiff points to several communications in which Defendant "referred to the Policy, described the Claim as Plaintiff's claim, and/or described Plaintiff as the 'customer'". *Id.*, ¶¶ 46-47 (citing *Claim Letters* [#45-6]). Plaintiff asserts that Defendant knew Ascentium was attempting to collect payment on its loans at the time Defendant sent the denial letter; that Defendant knew it was Plaintiff's understanding that it was the insured under the Policy; and that Defendant "knew or should have known that Plaintiff would rely on the representations in the Claim Denial to challenge the Claim Denial and/or otherwise directly pursue Defendant for Plaintiff's losses when Defendant sent the Denial Letter to Plaintiff." *Id.*, ¶¶ 50-52. Finally, Plaintiff points to a note in the Claim File [#45-7] that refers to Plaintiff as an "Additional Insured." *Id.*, ¶ 56.

Plaintiff retains her original three claims of breach of contract; bad faith in violation of Colo. Rev. Stat. § 10-3-1115 and -1116; and common law bad faith breach of insurance contract. *Id.*, ¶¶ 59-73. Notably, Plaintiff has added two allegations in the alternative: that "Defendant entered into a contract or contracts with Ascentium under which Defendant[3] was an intended beneficiary" and that "Defendant entered into a contract or contracts with Plaintiff by virtue of a novation that recognized Plaintiff as an insured or beneficiary." *Id.*,

---

[3] The Court presumes that this is an error and that Plaintiff meant to identify *itself* as an intended beneficiary, rather than Defendant.

3

¶ 61, ¶ 62. Plaintiff pleads three additional claims in the alternative: negligent misrepresentation, promissory estoppel, and equitable estoppel. *Id.*, ¶¶ 74-97.

**B.     Procedural History**

On August 18, 2023, Plaintiff filed suit against Assurant Insurance Agency, Inc. ("Assurant") in District Court for Larimer County, Colorado, alleging breach of contract, statutory bad faith, and common law bad faith arising from the same claim. *See generally State Court Complaint* [#4]. On September 19, 2023, Plaintiff filed its First Amended Complaint, naming ABIC as the defendant in place of Assurant but alleging the same three causes of action. *See First Am. Compl.* [#6]. On November 10, 2023, Defendant ABIC removed the case to federal court. *Notice of Removal* [#1]. One week later, on November 17, 2023, Defendant moved to dismiss on the basis that Plaintiff lacked standing as neither an insured nor a third-party beneficiary of the Policy. *Motion to Dismiss* [#12] at 1. Defendant moved to stay the case pending resolution of its motion, which the Court granted. *See Minute Order* [#20].

On January 22, 2024, the District Judge held oral argument on the Motion to Dismiss [#12], denying it without prejudice and ordering "[l]imited discovery . . . on the existence of another policy." *See Courtroom Minutes* [#29]. The stay was lifted and on February 16, 2024, the Court held a Scheduling Conference and entered a Limited Scheduling Order [#36]. At that time, Plaintiff's statement of the case included that "Defendant made several representations to Plaintiff during the claims process indicating that it was the beneficiary and/or loss payee under Policy #ASP003784400." *Limited Scheduling Order* [#36] at 4. The Court permitted limited discovery but did not set a deadline for joinder of parties or amendment of pleadings. *Id.* at 9. However, May 20,

4

2024 was set as the limited discovery cut-off date while the dispositive motions deadline was set for June 25, 2024. *See Courtroom Minutes* [#35] at 1. On July 9, 2024, following an extension of the dispositive motions deadline, Defendant ABIC filed a Motion for Summary Judgment. *See Order* [#43]; *Motion for Summary Judgment* [#44]. Three weeks later, Plaintiff filed the instant Motion [#45] along with a black-lined proposed Second Amended Complaint [#45-1].

**C.   Conferral**

Although the Motion [#45] was styled as "unopposed," Defendant's Response [#50] shows otherwise. Moreover, Defendant asserts that Plaintiff's conferral efforts were inadequate, as it was only apprised of the potential negligent misrepresentation claim and "Plaintiff's counsel never sent the revised Motion to Amend or revised, proposed Second Amended Complaint to ABIC's counsel, prior to filing the Motion." *Response* [#50] at 5. Regarding the promissory and equitable estoppel claims, Defendant contends that its counsel received a "sole email, sent only three and a half hours before filing Plaintiff's Motion to Amend" which was not a reasonable, good faith effort to confer. *Id.*

The Court is concerned about the apparent lack of conferral, and Plaintiff's filing of a motion as "unopposed" before confirming that it was, in fact, unopposed. The purpose of D.C.COLO.LCivR 7.1(a) "is to require the parties to confer and to attempt to resolve a dispute before incurring the expense of filing a motion and before requiring the court to address a disputed issue." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003). The rule is not satisfied by a single email or an unreturned phone call to opposing counsel. *Id.* at 636. Instead, "the parties must hold a conference, possibly through the exchange of correspondence . . . and attempt to reach an agreement, including by

5

compromise if appropriate." *Id*. Nevertheless, in the interest of expediency and because Defendant's Response [#50] substantively addressed the proposed amendment, the Court will consider the Motion [#45] on the merits.

## II. Legal Standard

**A.     Rule 15(a)(2)**

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a [litigant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* This is consistent with the purpose of Rule 15, which is "to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Whether to grant or deny leave to amend a complaint is within a court's discretion. *Foman*, 371 U.S. at 182. Refusing leave to amend is generally justified only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

However, "[l]ateness does not of itself justify the denial of amendment." *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975). In this Circuit, the undue delay analysis "focuses primarily on the reasons for the delay" and denial of leave is appropriate where a party has no adequate explanation for the delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (collecting cases). "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the

6

complaint 'a moving target,' [or] to 'salvage a lost case by untimely suggestion of new theories of recovery[.]'" *Id.* (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001)). Additionally, the court may find undue delay and deny leave where "the facts underlying the claim were known to the plaintiff at the time suit was instituted." *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

Undue prejudice is the most important factor, but "[c]ourts typically find prejudice only when the amendment unfairly affects the [non-movants] 'in terms of preparing their defense to the amendment,'" such as where the amended claims arise from a different subject matter from that previously set forth in the prior pleading. *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)); *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) (acknowledging that "any amendment invariably causes some 'practical prejudice'" but noting that "undue prejudice means that the amendment would 'work an injustice to the [opposing party]'") (quoting *Carefusion 213, LLC v. Pro. Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010)).

### III. Analysis

Defendant argues that Plaintiff unduly delayed before moving to amend, as the relevant documents have been in its possession for years. *See Response* [#50] at 6-9. Defendant briefly argues that it would be unduly prejudiced if Plaintiff is permitted to amend because it has filed a motion for summary judgment, and it accuses Plaintiff of attempting to substitute belatedly in a new case. *Id.* at 9. Defendant argues that

7

amendment should be denied because Plaintiff's proposed claims would be futile. *Response* [#50] at 9-14.[4]

**A.     Undue Delay**

The Court acknowledges that "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Minter*, 451 F.3d at 1205. Thus, delay alone is not a sufficient basis to deny leave to amend, but a party who delays in seeking amendment "is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." *Id.* (citation omitted). Eventually, "delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party." *Id.* (citation omitted).

This lawsuit originated in Larimer County District Court on August 18, 2023, against Assurant, as an ordinary insurance claim—an alleged breach of an insurance contract paired with allegations of statutory and common law bad faith. *See State Court Compl.* [#4]. Plaintiff's claims remained the same when it amended to name Defendant ABIC and even after Defendant ABIC moved to dismiss on the basis that Plaintiff was not an insured or beneficiary under the Policy. *See First Am. Compl.* [#6]; *Motion to Dismiss* [#12] (filed November 17, 2023). The case continued in this form through oral argument on the Motion to Dismiss [#12] and the entry of a Scheduling Order [#36]—both of which

---

[4] Because the Court finds that Plaintiff's proposed amendments are unduly delayed and would be unduly prejudicial, it need not consider Defendant's futility arguments in depth. *Cf., e.g.*, *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145-DME-KMT, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008) (declining to "delve into the futility argument in great detail" under Rule 15(a) where the court declined leave to amend for other reasons). Nevertheless, the Court questions the plausibility of Plaintiff's proposed claims, particularly the reasonableness of Plaintiff's reliance on Defendant's use of ordinary terms such as "customer" and "your claim" and whether Plaintiff has plausibly alleged any promises or material misrepresentations outside the Policy.

8

permitted limited discovery on the issue of whether there was an additional insurance policy that covered Plaintiff. *See Courtroom Minutes* [#29]; *Scheduling Order* [#36] at 8-12. The parties' Proposed Scheduling Order, filed February 9, 2024, lists as an undisputed fact that "ABIC has denied Plaintiff is an insured under the Policy, or otherwise entitled to benefits." *See Am. Proposed Scheduling Order* [#34] at 6. The period of limited discovery closed and on July 9, 2024, Defendant filed a dispositive motion reasserting its argument that Plaintiff lacks standing to sue under the Policy. *See Motion for Summary Judgment* [#44] at 1. Up to this point, both parties litigated this case as an ordinary insurance breach-of-contract claim with allegations of bad faith.

Finally, three weeks after Defendant filed its summary judgment motion, Plaintiff sought leave to amend to assert three new claims sounding in quasi-contract and misrepresentation and to add two allegations to its breach of contract claim (i.e., that Plaintiff was an intended beneficiary or that there was a novation of the insurance contract). These new claims significantly shift and broaden Plaintiff's claim. Now, instead of seeking benefits owed under an insurance policy and relief for ABIC's alleged bad faith in adjusting Plaintiff's insurance claim, Plaintiff attempts to go around the insurance contract and seek relief based on alleged misrepresentations or promises outside it.

Given the consistency and clarity of Defendant's position throughout this litigation, Plaintiff's sudden shift is questionable. Plaintiff could have moved to plead these claims in the alternative at any time, even in response to Defendant's Motion to Dismiss [#12]. Plaintiff attempts to explain its timing by reference to new "information gained from ABIC's disclosures, including ABIC's representations in its internal claim file, communications

9

with Ascentium, and communications with Plaintiff." *Motion* [#45] at 5, ¶ 22.[5] However, of the six exhibits Plaintiff has attached to its proposed Second Amended Complaint [#45-1], four of them are years-old communications to which Plaintiff was a party. *See Second Am. Compl.* [#45-1], ¶ 18 (stating that the Summary of Coverage [#45-2] was provided to Plaintiff by Ascentium in early 2020); *Claim Denial Letter* [#45-3] (sent to Plaintiff on March 9, 2021); *Notice of Default* [#45-4] (March 17, 2021 letter from Ascentium to Plaintiff); *Claim Information Letters* [#45-6] (sent to Plaintiff from March to May 2020). Only two exhibits, i.e. the Ascentium Emails [#45-5] and the Claim File [#45-7], contain new material or communications to which Plaintiff was not a party—and the Ascentium Emails [#45-5] are not particularly substantive.

Plaintiff argues that "there is no undue delay, as the Court has not yet granted full discovery, this case is in its procedural infancy, and several of the additions refer to information recently obtained through discovery." *Motion* [#45] at 9. The Court is not persuaded. This case is not in its infancy. Discovery based on how this case is currently pleaded has concluded, the dispositive motions deadline has passed, and Defendant has filed a summary judgment motion which, if successful, would dispose of the claims in the operative complaint and end this case. As for the scope of discovery, Plaintiff was permitted appropriate discovery based on claims in its operative complaint, considering Defendant's standing arguments. Finally, as discussed, Plaintiff identifies only two exhibits containing any new information, and they do not support its proposed claims.

---

[5] This argument is fundamentally self-defeating because all three of Plaintiff's claims—negligent misrepresentation, promissory estoppel, and equitable estoppel—share an element of reliance. *See Second Am. Compl.* [#45-1], ¶¶ 81, 86, 94. To the extent that Plaintiff just learned of new communications in discovery, it could not possibly have relied on those communications when it decided to settle with Ascentium.

Plaintiff fails to explain why it could not have brought its proposed quasi-contract claims much sooner. To the extent Plaintiff's new claims are based on ABIC communications referencing Plaintiff as its "customer" and the insurance claim as Plaintiff's claim, Plaintiff received those communications *more than four years ago*. *See, e.g.*, Second Am. Compl. [#45-1], ¶ 47 (alleging that ABIC referred to the Policy, described the claim as Plaintiff's claim, or referred to Plaintiff as its customer in "at least four (4) "Claim Information" letters sent to Plaintiff between March 27, 2020 – May 2, 2020.") (citing *Claim Information Letters* [#45-6]). Moreover, since November 17, 2023, Defendant has consistently raised the same argument: Plaintiff is not an insured under the Policy and therefore lacks standing to bring these claims. *See Motion to Dismiss* [#12]; *Proposed Scheduling Order Amended* [#34]; *Motion for Summary Judgment* [#44]. At any time since then, Plaintiff could have moved to amend to allege quasi-contract claims in the alternative. Yet Plaintiff waited until three weeks after Defendant filed a dispositive motion, with no convincing explanation.

Plaintiff's timing strongly suggests that this is a litigation tactic—it is "using Rule 15 to make the complaint 'a moving target'" and attempting "to 'salvage a lost case by untimely suggestion of new theories of recovery[.]'" *Minter*, 451 F.3d at 1206 (quotations omitted). Plaintiff knew or should have known long before July 30, 2024, that it may not be an insured under the Policy, despite Defendant's March-May 2020 communications, and that it might be well-served to plead alternative claims. Under these circumstances, even if there were no prejudice to Defendant, the Court finds that Plaintiff's proposed amendment is unduly delayed. *Cf. Frank*, 3 F.3d at 1366 (affirming denial of leave to amend because the plaintiffs knew or should have known relevant facts long before they

11

moved to amend); *Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185 (affirming denial of leave to amend where the district court had "not[ed] that the facts underlying the claim were known to the plaintiff at the time suit was instituted").

Accordingly, the Court recommends that the Motion [#45] be **denied** because of undue delay. *See Myers v. Hummel*, No. 11-cv-00400-KMT-KLM, 2012 WL 1020519, at *6 (D. Colo. Mar. 26, 2012) (finding undue delay where plaintiff's motion to amend "was not filed until after he was served with Defendant's Motion for Summary Judgment" because it appeared to be an attempt to make the complaint a "moving target"); *Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185.

**B.      Undue Prejudice**

Defendant also asserts that it would suffer undue prejudice if amendment is permitted, because it already expended resources—including "considerable time and expense" on the summary judgment motion— "dealing with 'Case A'" and "Plaintiff ought not be allowed at the twelfth hour to substitute in a new 'Case B.'" *Response* [#50] at 9.

As previously discussed, from August 18, 2023 to July 30, 2024, Plaintiff proceeded in this case on a clear and specific theory: that it was entitled to benefits under the Policy, and that the insurer (initially identified as Assurant, now as Defendant) acted in bad faith in denying its claim. Defendant consistently challenged that theory, asserting that Plaintiff was not an insured and lacked standing under the Policy. The parties conducted discovery related to insurance coverage and, finding no additional policy, Defendant moved for summary judgment. Plaintiff now seeks to add a set of quasi-contractual claims well after the close of discovery and the dispositive motions deadline.

12

Plaintiff's new claims are not coextensive with the old ones—for example, Plaintiff claims negligent misrepresentation based on allegations that "Defendant gave false information to Plaintiff concerning Plaintiff's status as an insured or beneficiary under an insurance policy," which is not temporally limited to Defendant's handling of Plaintiff's broken CSD claim. *See Second Am. Compl.* [#45-1], ¶ 75. Plaintiff's estoppel claims allege that Defendant acted with knowledge or reasonable expectation that promises of insurance coverage would induce Plaintiff to undertake a particular action (i.e., to settle with Ascentium). On their face, these allegations reach beyond the insurance policy itself and extend past Defendant's handling and adjustment of Plaintiff's insurance claim.

The Court finds *Myers v. Hummel*, 2012 WL 1020519, persuasive. There, the plaintiff had originally alleged that the defendant breached a fiduciary duty. *Id.* at *1. After the defendant moved for summary judgment on the fiduciary duty issue, the plaintiff moved to amend to allege fraud claims. *Id.* at *1, *5. The Court found that amendment was unduly delayed, and further found that it would cause undue prejudice because the defendant had reasonably relied on the operative complaint, targeting its discovery efforts at the fiduciary duty claim and moving for summary judgment based on those discovery efforts. *Id.* at *7. The court noted that the plaintiff was "seek[ing] to add an entirely new and different claim well after the opportunity for discovery and filing dispositive motions has passed," which would likely require the court to reopen discovery and permit renewed dispositive motions briefing and, thus, prejudice the defendant. *Id.* The court concluded that, "while it may not be necessary to restart this case altogether to accommodate [the p]laintiff's proposed fraud claim, [the d]efendant would undoubtedly suffer significant additional expenses as a result of [the p]laintiff's palpable delay." *Id.*

13

Here too, the parties (and the Court) shaped discovery around the operative complaint and its insurance-related claims, to determine whether there was an insurance policy under which Plaintiff could sue. Defendant filed a summary judgment motion based on this limited discovery. Now, Plaintiff is attempting to add entirely new and different claims that would require the Court to reopen discovery and allow renewed dispositive motions briefing. Because the new claims are not limited to the insurance Policy and potentially not even limited to Defendant's handling of Plaintiff's claim, they would broaden discovery and Defendant would incur significant expenses. The Court concludes, with little difficulty, that Plaintiff's proposed amendment would unfairly affect Defendant in preparing its defense by suddenly shifting and expanding the scope of discovery after dispositive motions have been filed. *Cf. Minter*, 451 F.3d 1196; *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971) (defining prejudice "in terms of [defendants] preparing their defense to the amendment"). Accordingly, the Court recommends that the Motion [#45] be **denied** based on undue prejudice to Defendant.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Plaintiff's Motion to Amend [#45] be **DENIED** based on undue delay and undue prejudice.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after

14

being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: October 10, 2024                                  BY THE COURT:

                                                          Kathryn A. Starnella
                                                          United States Magistrate Judge